# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION
# CIVIL ACTION NO. 4:19-CV-00091-JHM-HBB

**JAMILEH IBRAHIM**                                                   **PLAINTIFF**

**VS.**

**VALIANT INTEGRATED SERVICES, LLC**                   **RESPONDENT**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Plaintiff's second motion to amend her complaint (DN 29). Respondent has filed a response in opposition (DN 31). Opposing the motion, Respondent contends that Plaintiff's attempted claim, under Count II, should be denied as futile, based on Plaintiff failing to state a claim upon which relief may be granted (Id.). Plaintiff filed a reply (DN 32). The matter is ripe for determination.[1]

## FACTS AND NATURE OF THE MOTION

Plaintiff filed her complaint against Respondent on July 26, 2019 (DN 1). Subsequently, Plaintiff filed an amended complaint against Respondent on February 10, 2020 (DN 21). Plaintiff alleges that she was an employee of ABM Government Services, LLC ("ABM") (Id. at pp. 2). Plaintiff's amended complaint asserts that Respondent is ABM's successor in interest, due to Respondent purchasing ABM and maintaining control over the linguistic services division (Id. at pp. 2, 4). However, Respondent denies both that Respondent purchased ABM and that Respondent is a successor in interest (DN 23 pp. 2, 4).

---

[1] The District Judge referred this matter to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A), for rulings on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any dispositive matter (DN 6).

Plaintiff seeks relief under two Counts: (1) Discrimination in violation of the federal Civil Rights Act of 1964; and (2) discrimination in violation of Kentucky's Civil Rights Act (DN 21 pp. 5-7). These Counts stem from Plaintiff's deployment to Jordan, where she worked with members of the United States Air Force (Id. at pp. 2).

During her deployment, Plaintiff claims to have been subject to sexual harassment by Sergeant Kern of the United States Air Force (Id.). Upon reporting these claims, Plaintiff was allegedly retaliated against by Captain Bradley Byington, Sergeant Kern's commanding officer, by allegedly defaming Plaintiff with a poor performance evaluation, and the evaluation subsequently caused Plaintiff to lose her position (Id. at pp. 2-3). Plaintiff was removed from her deployment and was offered a United States Department of Defense's Language Interpretation and Translation Enterprises ("DLITE") deployment in Iraq (Id. at pp. 3).

As such, Plaintiff began the process of obtaining a visa to travel to Iraq (Id.). Plaintiff allegedly waited several months for visa, with ABM allegedly stating the Iraq visa requirements were delaying Plaintiff's deployment, but Plaintiff believed this delay was retaliation based on her own investigation into her visa (Id.). From these actions, Plaintiff submitted a claim of discrimination to the Equal Employment Opportunity Commission on April 20, 2015, and the claim was finalized and filed on May 22, 2015 (Id. at pp. 4). On May 26, 2015, ABM allegedly contacted Plaintiff, told her that her visa was approved, and she was now eligible to deploy (Id.).

Plaintiff claims she "no longer trusted that ABM was interacting with her in good faith and because she believed they would only continue to discriminate and retaliate, she chose to stay in her existing employment and did not move to the Iraq deployment under ABM" (Id.). Subsequently, believing that ABM was blacklisting her and interfering with employment

opportunities, Plaintiff submitted a second claim to the Equal Employment Opportunity Commission on March 15, 2017, asserting a charge of retaliation (Id.).

According to Plaintiff's amended complaint, "In or around August of 2018 Ms. Ibrahim's then employer Global Linguist Solutions Company (GLS) for whom she was working on a DLITE deployment in Syria, lost its contract to Respondent, and Ms. Ibrahim was advised by her point of contact to communicate with Respondent to get her paperwork in so that she could continue working in Syria where she was then deployed" (Id. at pp. 4-5). When inquiring into the status of her application for her own position, Respondent allegedly told Plaintiff that Respondent was not able to offer her employment (Id. at pp. 5). Plaintiff asserts that this refusal to employ her is based upon the performance evaluation completed by Captain Byington, but the evaluation had not prevented her from serving in DLITE positions prior to Respondent's purchase of ABM (Id.). Finally, Plaintiff asserts that she "has been advised by several DLITE contractors, that she is not eligible for hire on any DLITE employment, and to ask Valiant about it" (Id.) (referencing Ex. E).

As such, Plaintiff filed her initial complaint on July 26, 2019, asserting a claim of Retaliation, claiming "Defendant Valiant Integrated Services, LLC discriminated against Plaintiff Ibrahim because she engaged in protected activity against it's [sic] Subsidiary, ABM" (Id. at PageID 9). Upon stipulation to withdraw Respondent's motion to dismiss (DN 11), Plaintiff's motion to amend her complaint the first time was granted on February 10, 2020 (DN 20, 21). In amending, Plaintiff recharacterized her first Count as "Discrimination in Violation of 42 U.S.C. § 2000e-3(a)",[2] and Plaintiff added another Count to her complaint: "Discrimination in Violation of KRS 344".[3]

---

2  The federal Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) *et seq.*

3  The Kentucky Civil Rights Act, KY. REV. STAT. ANN. § 344 *et seq.*

3

Seven months after filing her amended complaint, on September 16, 2020, Plaintiff made a second motion to amend her complaint (DN 29). In Plaintiff's second motion to amend her complaint, she claims:

> [A]fter filing the Amended Complaint, Plaintiff's counsel learned that Ms. Ibrahim's state law claim was not viable in that the Kentucky Civil Rights Act does not cover extraterritorial acts, and all of Ms. Ibrahim's alleged claims occurred while Ms. Ibrahim was out of the country deployed abroad. The same acts and allegations that were alleged to support the [Kentucky Civil Rights Act] claim also support a Kentucky common law claim of tortious interference with prospective contract, in this case prospective employment contracts. These allegations were asserted in the amended complaint, and documents were attached to the amended complaint that support the claim; however, the claim itself, of interference with prospective contracts, was not asserted, as generally, the [Kentucky Civil Rights Act] pre-empts the field, and all such common law claims are not considered viable when the statutory claim is. While counsel could have asserted the claim as an alternative theory when first moving to amend the complaint, Plaintiff was facing a dismissal of all her claims if not amended, and at the time counsel did not have time to fully analyze the claims.

(DN 29 PageID 199-200). Upon reviewing the second amended complaint attached to Plaintiff's motion, the facts asserted remain relatively unchanged. Three stark changes do appear though: (1) Plaintiff removes all mention of the performance evaluation purportedly created by Captain Byington—the same memo the Plaintiff initially claimed prevented her from being employed (DN 29-1 PageID 203-06); (2) Plaintiff adds two paragraphs detailing that on December 6, 2019, a linguist recruiter for CSM Solutions allegedly emailed Plaintiff and stated "Valiant the prime said you are not eligible for hire under DLITE, for more details contact Valiant" (Id. at PageID 206); and (3) Plaintiff attempts to amend her second Count alleging "Unlawful Interference with Prospective Employment", based upon Respondent's statements that Plaintiff was ineligible for hire under DLITE (Id. at PageID 207-08).

4

In opposition of Plaintiff's second motion to amend her complaint, Respondent asserts Plaintiff's motion is futile because she has failed to state a claim upon which relief may be granted (DN 31 pp. 1). To bolster this claim, Respondent asserts that the statements Plaintiff uses in her claims do not meet the requirement of "defamatory" because "the mere statement does nothing to impugn the professional reputation of the prospective employee" (Id. at pp. 2). Further, Respondent states that "[e]ven if Valiant's alleged statement that Ibrahim was not eligible for hire under DLITE was false …, Ibrahim still fails to state a claim upon which relief may be granted because the allegedly false statement was not capable of a defamatory meaning as it did not impugn Ibrahim's reputation in any way" (Id. at pp. 5).

After Defendant's response, Plaintiff filed a reply where she spends the large majority of her argument simply attempting to distinguish the cases cited by Respondent (DN 32). As for the minimal law cited by Plaintiff, in her favor, she broadly states that she "can pursue her claim under a standard of defamation *per quod*"[4] (Id. at pp. 6). In doing so, Plaintiff would need "proof of extrinsic facts or explanatory circumstances and special damages … but do not require that [defamatory statements] be injurious on their face" (Id. at pp. 6) (quoting Stringer v. Wal-Mart Stores, Inc., 151 S.W.3d 781, 794 (Ky. 2004)).

---

4  A "difference between the two actionable types of slander is the court's approach in analyzing the defamatory nature of the statement: Slander per se is accomplished by the very words spoken. Slander per quod is defined as slander determined by the interpretation of the listener, through innuendo, as between an innocent or harmless meaning and a defamatory one." Jefferson Audio Visual System, Inc. v. Gunnar Light, NO. 3:12-CV-00019-H, 2013 WL 1947625, at *2 n.3 (W.D. Ky. May 9, 2013) (citing 50 AM. JUR.2d, *Libel and Slander* § 140 (2013)) (quotations omitted). Statements are slanderous *per se* when they "tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people and to deprive him of their friendship, intercourse and society. But it is not necessary that the words imply a crime or impute a violation of laws, or involve moral turpitude or immoral conduct." Id. at *2 (citation omitted). Plaintiff has never asserted this to be a matter of defamation *per se*.

ANALYSIS

"Federal Rule of Civil Procedure 15 entitles a party to 'amend its pleading once as a matter of course' before being served with a responsive pleading, FED. R. CIV. P. 15(a), and in all other cases, allows a party to amend either 'with the opposing party's written consent or the court's leave.'" Taylor v. G.P.E.D.C., Inc., No. 5:16-CV-00004-TBR, 2017 U.S. Dist. LEXIS 106528, *35 (W.D. Ky. July 11, 2017). Pursuant to FED. R. CIV. P. 15(a)(2), leave to amend a complaint shall be freely granted when justice so requires. In light of this liberal view, "[a] motion to amend a complaint should be denied if the amendment is sought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." Colvin v. Caruso, 605 F.3d 282, 294 (6th Cir. 2010).

According to Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000), "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Further, a district court must "(1) view the complaint in the light most favorable to the plaintiff and (2) take all well pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009). But the court "need not accept bare assertions of legal conclusions." Id.

Prevailing law in Kentucky recognizes "that intentional and improper interference with the prospective contractual relations of another gives rise to liability."[5] Nat'l Collegiate Athletic Ass'n By & Through Bellarmine College v. Hornung, 754 S.W.2d 855, 857 (Ky. 1988) (citing Cullen v. South East Coal Co., 685 S.W.2d 187 (Ky. Ct. App. 1983); *Restatement (Second) of Torts* § 766B).

Plaintiff assets that this court should "focus not upon the actual meaning of the words but on the extrinsic facts which explain the meaning of the communications." Jae Enters., Inc. v. Oxgord Inc., NO. 5:15-CV-00228-TBR, 2016 WL 865328, at *10 (W.D. Ky. Mar. 2, 2016) (quoting Jefferson Audio Visual System, Inc. v. Gunnar Light, NO. 3:12-CV-00019-H, 2013 WL 1947625, at *3 (W.D. Ky. May 9, 2013)). While Plaintiff's proposed Count II alleges "Unlawful Interference with Prospective Employment," based on the facts and allegations presented, it is clear that Plaintiff is asserting a claim of "Intentional Interference with Prospective Contractual Relations," also known as "Intentional Interference with Prospective Advantage." *See* Hornung, 754 S.W.2d at 857; *Restatement (Second) of Torts* § 766B.

The *Restatement (Second) of Torts* defines this claim as one where a person "intentionally and improperly interferes with another's prospective contractual relation … [and] is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of[:] (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation[;] or (b) preventing the other from acquiring or continuing the prospective relation." *Restatement (Second) of Torts* § 766B. "

---

5 When reviewing the matter in Hornung, the Kentucky Supreme Court noted that they had never previously adopted Sections 766B, 767, and 773 of the *Restatement (Second) of Torts*. Nat'l Collegiate Athletic Ass'n By & Through Bellarmine College v. Hornung, 754 S.W.2d 855, 857 (Ky. 1988). Referencing the Kentucky Court of Appeals' decision in Cullen, which "recognized that intentional and improper interference with the prospective contractual relations of another give rise to liability," the Kentucky Supreme Court ultimately determined that "the foregoing sections of the *Restatement* fairly reflect the prevailing law of Kentucky." Id.

To recover under this claim, Plaintiff "must plead and prove the following elements: (1) the existence of a valid business relationship or its expectancy; (2) a defendant's knowledge thereof; (3) an intentional act of interference;[6] (4) improper motive;[7] (5) causation; and (6) [] damages." CMI, Inc. v. Intoximeters, Inc., 918 F. Supp. 1068, 1080 (W.D. Ky. 1995).

Based on the response and reply filed by the parties, this appears to be a circumstance where the parties developed their arguments focusing on defamation while unintentionally continuing down an unnecessary rabbit hole. Respondent asserts Plaintiff's motion for leave to amend is futile because the statements Plaintiff uses in her claims do not meet the requirement of "defamatory" because "the mere statement does nothing to impugn the professional reputation of the prospective employee" (DN 31 pp. 2). When reviewing the requisite elements above, qualifying whether a statement is defamatory is not required. As such, this Court will not determine whether or not the statement falls into a category of defamatory speech.

When viewing the complaint in the light most favorable to the plaintiff and taking all well-pleaded factual allegations as true,[8] Plaintiff's complaint appears to plead the foundation to a claim of "Intentional Interference with Prospective Contractual Relations" sufficiently to survive a Rule 12(b)(6) motion to dismiss. First, Plaintiff alleges the expectancy of a valid business relationship with CSM Solutions, specifically in terms of CSM hiring Plaintiff as a subcontractor

---

6  "A party damaged by interference with his contract rights can recover even though [Plaintiff] cannot establish fraud or coercion or a master servant relationship." Carmichael-Lynch-Nolan Advertising Agency, Inc. v. Bennett & Associates, Inc., 561 S.W.2d 99, 102 (Ky. Ct. App. 1977).

7  The Court in Hornung noted that "it is clear that to prevail a party seeking recovery must show malice or some significantly wrongful conduct." Nat'l Collegiate Athletic Ass'n By & Through Bellarmine College v. Hornung, 754 S.W.2d 855, 859 (Ky. 1988). In quoting *Prossor and Keeton on Torts* § 130, the Court forewarned that "the [interference] cases have turned almost entirely upon the defendant's motive or purpose, and the means by which he has sought to accomplish it…. [S]ome element of ill will is seldom absent from intentional interference; and if the defendant has a legitimate interest to protect, the addition of a spite motive usually is not regarded as sufficient to result in liability." Id. (quoting *Prossor and Keeton on Torts* § 130 (W.P. Keeton ed. 5th ed. 1984).

8  *See* Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009)

(DN 29-1 PageID 206). By Huda Alshara supposedly contacting Respondent regarding Plaintiff and her eligibility for hire under DLITE, Respondent would have knowledge thereafter of the expectancy of the business relationship (Id.). Based on Alshara's response of "Valiant the prime said you are note eligible for hire under DLITE …", Respondent's purported message to Alshara is the alleged intentional act of interference (Id.). As for the motive, this is where Plaintiff's extensive factual predicate is required. In short, Plaintiff claims Respondent's improper motive was an attempt to blacklist her from DLITE positions and retaliate, as a result of Plaintiff's EEOC charges and Plaintiff's reporting of sexual harassment against Sergeant Kern (Id. at 203-07). Plaintiff asserts that "[a]s a direct and proximate result of [Respondent]s conduct [i.e. the statement to Alshara] …, [Plaintiff] suffered actual damages" (Id. at 208). Finally, Plaintiff claims she "suffered actual damages in the form of lost employment opportunities, lost wages, emotional pain and other non-pecuniary losses …" (Id.).

      Therefore, Plaintiff sufficiently articulates her claims and makes a well-pleaded complaint that Respondent's statement to the third party, regardless of whether the statement is defamatory, is an "Intentional Interference with Prospective Contractual Relations". As such, Plaintiff's proposed amendments to her complaint are not futile.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's second motion to amend her complaint (DN 29) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file the proposed second amended complaint at DN 29-1.

October 23, 2020

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:    Counsel of Record